NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RICHARD D. WEISS, | : | |
| Plaintiff, | : | Civ. No. 02-4249 (GEB) |
| v. | : | |
|  | : | **MEMORANDUM OPINION** |
| FIRST UNUM LIFE INSURANCE COMPANY, *et al.*, | : | |
| Defendants. | : | |

**<u>BROWN, District Judge</u>**

      This matter comes before the Court upon order of the United States Court of Appeals for the Third Circuit vacating the August 27, 2003 Order of this Court dismissing plaintiff's First Amended Complaint; vacating the February 13, 2004 Order of this Court denying in part and granting in part plaintiff's motion for leave to file a Second Amended Complaint, except with regard to plaintiff's ERISA amendment; and remanding the matter to this Court for a determination of what effect the McCarran-Ferguson Act, specifically section 1012(b) of Title 15 of the United States Code, may have on the disposition of this case.  For the reasons discussed below, the Court finds that Section 1012(b) is applicable to the matter and therefore plaintiff's First Amended Complaint is dismissed with respect to the federal RICO claims.

## I. BACKGROUND

The factual and procedural history of this case has been set forth in detail in the Court's August 27, 2003 and February 25, 2004 Memorandum Opinions.  By way of summary, this matter arises from defendant First Unum Life Insurance Company's termination of plaintiff Richard Weiss' ("Plaintiff") long-term disability benefits on October 23, 2001.  On July 24, 2004, Plaintiff commenced this action in the Superior Court of New Jersey, Somerset County.  Thereafter, on August 29, 2002, defendants removed the state court action to this Court.  In October 2002, defendants reinstated Plaintiff's long-term disability benefits retroactive to October 23, 2001, with interest.

On November 26, 2002, after the reinstatement of his benefits, Plaintiff filed a First Amended Complaint adding various defendants (collectively referred to as "Defendants") and asserting for the first time claims under the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and the New Jersey RICO statute, N.J. Stat. Ann. §§ 2C:41-1 to -6.2.  On January 21, 2003, the Court granted Defendants' motion to dismiss Plaintiff's state law causes of action as preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  In March 2003, Defendants moved to dismiss the RICO claims alleged in Plaintiff's First Amended Complaint.  On August 27, 2003, the Court granted Defendants' motion, but also granted Plaintiff's request to file a motion for leave to file a Second Amended Complaint.  More specifically, the Court found that Plaintiff did not have standing to assert a civil RICO claim for failure to allege a compensable loss to his business or property and that he failed to plead fraud with the requisite particularity under Fed. R. Civ. P. 9(b).

On February 13, 2004, the Court entered an order denying in part Plaintiff's motion for leave to file a Second Amended Complaint with respect to Counts I, II, III, and IV of the proposed Second Amended Complaint which alleged federal and state RICO claims; granting in part Plaintiff's motion with respect to Count V of the proposed Second Amended Complaint that sought a declaratory judgment as to Plaintiff's eligibility for future benefits under ERISA; and granting leave for Plaintiff to file a Third Amended Complaint in accordance with the Order. The parties thereafter entered into a stipulation to dismiss the Second Amended Complaint without prejudice, which was followed by Plaintiff's appeal. The Third Circuit issued the order remanding the matter on June 14, 2005, and on July 20, 2005, this Court issued an order instructing the parties to concurrently file briefs on the applicability of the McCarran-Ferguson Act, followed by the concurrent filing of reply briefs.

**II. DISCUSSION**

    A. <u>The McCarran-Ferguson Act</u>

By order of the Third Circuit, this Court must determine what effect, if any, the McCarran-Ferguson Act, specifically 15 U.S.C. § 1012(b), may have on the disposition of this case. Section 1012(b) provides, in pertinent part, that:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . .

<u>Id.</u> The Act provides that "continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several

States." 15 U.S.C. § 1011.

The Supreme Court's most recent analysis, in Humana Inc. v. Forsyth, 525 U.S. 299 (1999), described the Act as "preclud[ing] application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." Id. at 307 (citing Dep't of Treasury v. Fabe, 508 U.S. 491, 501 (1993)). The Court, addressing RICO claims against a group health insurer, noted that RICO is not a law that "specifically relates to the business of insurance," and thus the case would turn on the question of whether RICO's application to the claims at issue would "invalidate, impair, or supersede" Nevada's laws regulating insurance. Id.

The Court stated that "[t]he term 'invalidate' ordinarily means 'to render ineffective, generally without providing a replacement rule or law" and "the term 'supersede' ordinarily means 'to displace (and thus render ineffective) while providing a substitute rule." Id. (citations omitted). Based upon those definitions, the Court decided that RICO's application to the claims in the complaint would neither "invalidate" nor "supersede" Nevada law. Id. at 307-08. The Court considered various interpretations of "impair" and stated the dictionary definition of "[t]o weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." Id. at 309-10 (citing Black's Law Dictionary 752 (6th ed. 1990)). From that definition, the Court enunciated the following formulation of Section 1012(b): "When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." Id. at 310.

B. Applicability Of The Act

Under that standard, the Court held that suit under RICO would not impair Nevada law and therefore was not precluded by the McCarran-Ferguson Act. Id. at 311. The Supreme Court surveyed the Nevada regulatory framework to demonstrate the justification for this holding. Id. at 311-14. The Court found that under Nevada's Unfair Insurance Practices Act, Nev. Rev. Stat. § 686A.010 et seq., the State Insurance Commissioner has the authority to issue charges for violation of the act, and may issue cease and desist orders and administer fees. Humana, 525 U.S. at 312 (citations omitted). Furthermore, victims of insurance fraud may pursue private actions for violations of numerous unfair insurance practices. Id. Finally, "aggrieved insured parties may be awarded punitive damages if a jury finds clear and convincing evidence that the insurer is guilty of 'oppression, fraud or malice." Id. at 313 (citation omitted). This damages award could "exceed[] the treble damages available under RICO." Id. (footnote omitted).

The Court reasoned that there is no frustration of state policy in the RICO litigation before the Court because "RICO's private right of action and treble damages provision appears to complement Nevada's statutory and common-law claims for relief." Id. The Court further noted that Nevada filed no brief at any stage of the suit arguing that application of RICO would frustrate any state policy. Id. Finally, the Court reasoned that insurers have also relied upon RICO when they were fraud victims, citing, inter alia, Aetna Casualty Surety Co. v. P&B Autobody, 43 F.3d 1546, 1551 (1st Cir. 1994).

Plaintiff in the instant case similarly brings RICO claims against Defendants for nonpayment of benefits. The Supreme Court's decision in Humana provides this Court with the analytical framework to determine whether suit under the federal RICO statute by policy

5

beneficiaries would "invalidate, impair, or supersede" New Jersey law.  Although Plaintiff cites Sabo v. Metropolitan Life Insurance Co., 137 F.3d 185 (3d Cir. 1998), cert. denied, 525 U.S. 1129 (1999), for support, that case, to the extent it addressed Pennsylvania law, is not applicable.

The test adopted by the Sabo court, however, is applicable.  Pursuant to Sabo, the McCarran-Ferguson Act precludes federal litigation where:

> (1) the federal statute under which the allegedly precluded action is brought . . . does not specifically relate to the "business of insurance"; (2) the complained-of activities constitute the "business of insurance"; (3) the relevant state has enacted laws for the purpose of regulating these complained-of activities; and (4) the application of the federal statute would, "invalidate, impair[,] or supersede" such laws.

Id. at 188.  The parties have agreed that the first three prongs of the test are satisfied, and that the only point in contention is whether the application of the federal RICO statute would "invalidate, impair, or supersede" New Jersey's insurance regulatory scheme.

New Jersey's insurance regulatory scheme, known as the Insurance Trade Practices Act ("ITPA"), N.J. Stat. Ann. §§ 17:29B-1 to -19, was enacted with the stated purpose of "regulat[ing] trade practices in the business of insurance in accordance with the intent of Congress as expressed in the [McCarran-Ferguson] Act . . . ." N.J. Stat. Ann. § 17:29B-1.  The ITPA bears some similarity to Nevada's statute.  As with the Nevada statute authorizing the Nevada Insurance Commissioner to issue charges for violation of the act, along with issuing cease and desist orders and administering fees, the ITPA authorizes the New Jersey Commissioner of Banking and Insurance to enforce the provisions of the statute.  See N.J. Stat. Ann. §§ 17:29B-5 to -7.  In contrast to the Nevada statute, however, the ITPA does not provide for a private right of action or

an award of punitive damages.[1]

A common law cause of action sounding in contract has been recognized by the New Jersey Supreme Court for bad-faith failure to pay an insured's claim. Pickett v. Lloyd's, 131 N.J. 457, 470 (1993). There, the Court noted that legislation had been proposed to provide a remedy for the wrong, but had not passed. Id. at 471 (citing A. 1279, 205th Leg., First Annual Sess. (1992)(permitting first-party claim against insurer and contemplating punitive and consequential damages, in addition to recovery of policy benefits)). In fashioning a remedy, the Court therefore limited it to the "familiar principles of contract law" where "a party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract." Id. at 474 (citation omitted). In so doing, the Court stated, consistent with relevant New Jersey case law, "that wrongful withholding of benefits . . . does not thereby give rise to a claim for punitive damages." Id. at 476 (citations omitted).

One of the cases cited in Pickett was Pierzga v. Ohio Cas. Group of Ins. Cos., 208 N.J. Super. 40 (N.J. Super. Ct. App. Div.), certif. denied, 104 N.J. 399 (1986). In Pierzga, the Appellate Division held that the ITPA "applies to wrongs to the public rather than any individual

---

[1] N.J. Stat. Ann. § 17:29B-18, entitled "Remedies," permits a person aggrieved by violation of the ITPA, "to file a complaint with the Commissioner of Banking and Insurance." Upon receipt of the complaint, the Commissioner is instructed to investigate the insurer to determine whether the insurer has violated any provision of the ITPA. Id. Thereafter, the Commissioner may:
> (1) order an insurer that is in violation to pay a monetary penalty of $5,000 for each violation;
> (2) order the insurer to make restitution to the aggrieved person; or
> (3) obtain equitable relief in a State or federal court of competent jurisdiction against an insurer, as well as the costs of suit, attorney's fees and expert witness fees.

Id.

and violations of the [ITPA] do not create individual or private causes of action." Id. at 47 (citations omitted). The court also held that the "exclusive regulatory jurisdiction of insurance companies, at least with respect to the payment of claims, is within the Department of Insurance[,]" and consequently the Consumer Fraud Act ("CFA") could not support plaintiff's claims seeking punitive damages for nonpayment of benefits. Id. at 46-47. Later, in Lemelledo v. Beneficial Mgmt. Corp. of America, 150 N.J. 255 (1997), the New Jersey Supreme Court recognized the line of lower court decisions, including Pierzga, holding that the payment of insurance benefits was not subject to the CFA, but declined to express an opinion "about the validity of those holdings." Lemelledo, 150 N.J. at 265 n.3.

Plaintiff cites a recent Third Circuit case, Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160 (3d Cir. 2001), in support of the contention that the McCarran-Ferguson Act does not preclude application of RICO to Plaintiff's claims. That case, however, is distinguishable in two ways. First, as with Sabo, Highmark addressed the application of federal law, in that case the Lanham Act, to Pennsylvania's Unfair Insurance Practices Act. Id. at 165. Second, in conducting the inquiry, the Third Circuit noted that "actions for deceit and fraud in connection with the insurance industry are not barred [by Pennsylvania law], and are available to provide remedies for victims of illegal insurance practices." Id. at 168. The state court cases cited above demonstrate that New Jersey's ITPA differs notably from the Pennsylvania statute in terms of its exclusivity, and thus Highmark is not dispositive here.

It is clear that neither New Jersey case law nor statutory law permits a private right of action for nonpayment of benefits, nor do they provide for an award of punitive damages. The differences in New Jersey's ITPA from the Nevada statute thus distinguish this case from Humana

where the Supreme Court found that "RICO's private right of action and treble damages provision appears to complement Nevada's statutory and common-law claims for relief." Humana, 525 U.S. at 313. As a result, application of the federal RICO statute would frustrate the stated policies of New Jersey's ITPA and interfere with the State's administrative regime.[2]

Accordingly, Plaintiff's First Amended Complaint is dismissed with respect to the federal RICO claims. The Court will permit Plaintiff to file a motion for leave to file a Third Amended Complaint within twenty days of the date of this Order.[3]

### III. CONCLUSION

For the reasons discussed above, the Court finds that the McCarran-Ferguson Act, specifically Section 1012(b), is applicable to the facts of this case. Accordingly, Plaintiff's First Amended Complaint is dismissed with respect to the federal RICO claims. Plaintiff is granted leave to file a Third Amended Complaint. An appropriate form of order accompanies this Memorandum Opinion.

Dated: November 21, 2005

                                                s/ Garrett E. Brown, Jr.
                                                GARRETT E. BROWN, JR., U.S.D.J.

---

[2] Although, to the Court's knowledge, New Jersey has filed no brief at any stage of the suit arguing that application of RICO would frustrate any state policy, the Supreme Court's citation of Nevada's failure to do so in Humana was clearly not the dispositive factor.

[3] Such motion shall include Plaintiff's proposed Third Amended Complaint.